[Cite as *State v. Taylor*, 2014-Ohio-4070.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-130394 |
| | | C-130457 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1200908 |
| | | B-1203166 |
| vs. | : | |
| | | *O P I N I O N.* |
| JEROME TAYLOR, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affimed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 19, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bruce K. Hust,* for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**DeWine, Judge.**

{¶1}     These are criminal appeals of convictions for felonious assault and having a weapon while under a disability following a jury trial. Jerome Taylor argues that his convictions were against the manifest weight of the evidence, and that the trial court erred when it failed to make the requisite findings before imposing consecutive sentences. We reverse the trial court's judgment with respect to the sentences it imposed, and affirm the court's judgment in all other respects.

{¶2}     Mr. Taylor was involved in a venture with the victim in this case, Rico Jones, to open a nightclub. Mr. Taylor ostensibly owned a vacant club that he agreed to rent to Mr. Jones. The two worked together to get the club fixed up, but somewhere along the way things went sour.

{¶3}     Matters came to a head on January 12, 2012. Mr. Jones showed up at the club that day, and the two got into a heated argument. As Mr. Jones recounted to the jury, he believed Mr. Taylor had a gun and was going to shoot him. Mr. Jones drew his own gun and managed to take Mr. Taylor's gun from him. After calming Mr. Taylor down, Mr. Jones removed the bullets from Mr. Taylor's gun and returned it to him. Mr. Taylor left the premises.

{¶4}     About 15 to 45 minutes later, Mr. Taylor was again at the club's door, this time accompanied by several other men. The doors of the club were chained shut. The two again argued, and Mr. Taylor shot Mr. Jones through an opening in the doors, hitting him twice in the midsection. Mr. Jones returned fire, and Mr. Taylor and his companions fled.

{¶5}     Officer Julie Graham was called to Good Samaritan Hospital that day in response to a report that a shooting victim had been dropped off. The victim, Mr.

Taylor, told her that he had been shot in a park. Detective Mark Longworth testified that he had interviewed both Mr. Jones and Mr. Taylor, and that Mr. Taylor denied having brought a gun to the club on the day of the shooting. Detective Longworth also stated that when executing a search warrant at Mr. Taylor's residence, he had found a discharged shell casing that was a Hornady brand—the same brand of casings that had been found at the club. At no point did Mr. Taylor tell police officers that Mr. Jones had shot him.

{¶6} Mr. Taylor told the jury a very different story than the one told by Mr. Jones. By Mr. Taylor's account, he had not taken a gun to the club on the first meeting on January 12. Rather Mr. Jones pulled a gun on him, and essentially held him hostage for 30 minutes. Mr. Taylor returned later with four men to tell Mr. Jones that he was done doing business with him. Mr. Taylor was not armed, though his associates were. When he tried to talk to Mr. Jones, Mr. Jones shot him in the face and waist.

{¶7} The jury found Mr. Taylor guilty of two counts of felonious assault and one count of having a weapon while under a disability. It found him not guilty of attempted murder. After the trial, Mr. Taylor pleaded guilty to a second count of having a weapon while under a disability for an incident that occurred while he was under indictment for shooting Mr. Jones. For the offenses related to the shooting of Mr. Jones, the trial court merged the felonious-assault counts, imposed a six-year sentence with a consecutive three-year sentence for a gun specification for the felonious assault and a three-year sentence for having a weapon while under a disability. The sentences were made concurrent with one another but consecutive to the three-year sentence for the second having-a-weapon-while-under-a-disability offense for an aggregate term of 12 years.

{¶8} In his first assignment of error, Mr. Taylor asserts that the trial court erred when it sentenced him to consecutive sentences without having made the findings required by R.C. 2929.14(C)(4). The state concedes the error, and our review of the record confirms that the requisite findings were not made. The first assignment of error is sustained.

{¶9} Mr. Taylor contends in his second assignment of error that his convictions were against the manifest weight of the evidence. Our review of the record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997). The two men presented sharply conflicting stories, and it was for the jury to assess their credibility. Further, the shell casings found in Mr. Taylor's apartment corroborate Mr. Jones's story. The second assignment of error is overruled.

{¶10} We therefore reverse the judgments of trial court in part and remand the cases so that the court may determine whether consecutive sentences are appropriate, and, if so, make the mandated findings during the sentencing hearing and incorporate them into its sentencing entry. *See State v. Bonnell*, Slip Opinion No. 2014-Ohio-3177, syllabus; *State v. Thomas*, 1st Dist. Hamilton No. C-140070, 2014-Ohio-3833, ¶ 7-9. In all other respects the judgments of the trial court are affirmed.

Judgment accordingly.

**DINKELACKER, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.